MCI TELECOMMUNICATIONS CORPORATION, a Delaware Corporation, and MCIMetro Access Transmission Services, Inc., a Delaware Corporation, Plaintiffs,

v.

U S WEST COMMUNICATIONS, INC., a Colorado Corporation; The Public Utility Commission of Oregon; and Roger Hamilton, Chair, Ron Eachus, and Joan H. Smith (in their official capacities as Commissioners of the Public Utility Commission), Defendants.

Civil No. 97–1576–JE.

United States District Court,
D. Oregon.

Dec. 10, 1998.

Lisa F. Rackner, Roy Pulvers, Lindsay Hart Neil & Weigler, Portland, OR, Mark B. Ehrlich, Thomas F. O'Neil, III, William Single, IV, MCI WorldCom Inc, Washington, DC, Maureen F. Del Duca, Donald B. Verrilli, D. Scott Barash, Douglas H. Hsiao, Jenner & Block, Washington, DC, for plaintiffs MCI Telecommunications and MCImetro Access Transmission Services.

Lawrence H. Reichman, Chin See Ming, Perkins Coie, Portland, OR, Sherilyn C. Peterson, Kirstin S. Dodge, Perkins Coie, Bellevue, WA, Norton Cutler, U.S. West Communications, Inc., Denver, CO, for defendant U.S. West Communications.

Michael T. Weirich, W. Benny Won, Department of Justice, General Counsel, Salem, OR, for Roger Hamilton, Ron Eachus, Joan H. Smith, and Oregon Public Utility Commission.

Philip D. Barz, Emily M. Sweeney, Theodore C. Hirt, Leslie V. Batchelor, U.S. Department of Justice, Civil Division, Washington, DC, Herbert C. Sundby, U.S. Attorneys Office, Portland, OR, for Amicus Curiae Federal Communications Commission.

## OPINION AND ORDER

JELDERKS, United States Magistrate Judge.

Plaintiffs MCI Telecommunications Corp. and MCImetro Access Transmission Services, Inc. (collectively, "MCI") bring this action against defendant U S West Communications, Inc. ("US West") the Oregon Public Utility Commission ("PUC"), and PUC Commissioners Roger Hamilton, Ron Eachus, and Joan Smith ("the Commissioners"). The Federal Communications Commission ("FCC") has participated in this proceeding as *amicus curiae*.

The dispute concerns the same interconnection agreement between U.S. West and MCI at issue in Civil No. 97–1575–JE. The background facts and procedural history are set forth in the prior opinion dated July 16, 1998, which denied the PUC's motion to dismiss. The parties have each moved for summary judgment.

### SCOPE AND STANDARD OF REVIEW

The Telecommunications Act of 1996 ("the Act"), Pub.L. No. 104–104, 110 Stat. 56, 47 U.S.C. § 153 *et seq.*, provides for federal district court review of interconnection agreements concluded pursuant to 47 U.S.C. § 252. "[A]ny party aggrieved" by a decision of a state public utilities commission concerning such an agreement "may bring an action in an appropriate Federal district court to determine whether the Agreement ... meets the requirements of the Act." 47 U.S.C. § 252(e)(6). The Act does not specify either the standard or scope of review.

After some initial hesitation, the parties now generally agree that the scope of this court's review is limited to the administrative record. With regard to the standard of review, it is neither desirable nor practical for this court to sit as a surrogate public utilities commission to second-guess the decisions made by the state agency to which Congress has committed primary responsibility for implementing the Act in Oregon. Rather, this court's principal task is to determine whether the PUC properly interpreted and applied the Act, which is a question of federal law that is reviewed *de novo*.

In all other respects, review will be under the arbitrary and capricious standard.

### DISCUSSION

#### 1. *Count I (deaveraging loop prices)*

MCI contends the PUC has violated the Act by failing to "deaverage" loop prices. Historically, prices for local telephone service in Oregon have been averaged, so that each U.S. West customer pays the same basic rate for service (at least in a given category, such as residential or business) even though it costs more to provide service to some customers such as those living in rural areas.

In computing the price for unbundled loops, the PUC set a single loop price based upon the average cost for U.S. West to provide a loop. MCI contends that loop prices must be cost-based, hence the price that MCI must pay U.S. West to use a loop in a dense urban area should be less than the price for a loop in a rural area. The court concludes that loop prices in Oregon are cost-based. The PUC simply chose to set a single loop price based upon the average cost of providing service rather than separately calculating the costs attributable to a particular loop and pricing each loop accordingly.

MCI also contends that the PUC is unlawfully subsidizing rural service by allowing U.S. West to charge higher prices for urban loops. The FCC has filed an *amicus* brief supporting MCI's position. The PUC considered MCI's objections, but concluded that loop price deaveraging was premature until retail phone rates are also deaveraged. Under present rules, U.S. West must charge the same retail rate for service, regardless of how much it costs to serve a particular customer. In addition, U.S. West is required to provide service to anyone in its service area who requests it, whereas its prospective competitors such as MCI are free to solicit the most profitable customers while leaving the remainder for U.S. West to serve.

The PUC has not refused to deaverage loop prices, but wants to do it in an orderly fashion. The PUC has agreed to consider deaveraging as part of PUC Docket UT 125.

The PUC's position makes sense. Although the Act contemplates a competitive world in which services are sold on the basis of cost alone, the reality is that we don't yet have a true free market. Rather, we have a hybrid system in which Competitive Local Exchange Carriers (CLECs) are free to compete but Incumbent Local Exchange Carriers (ILECs) such as U.S. West are still subject to extensive restrictions. Similarly, although the Act contemplates the establishment of new funding sources for Universal Service (*i.e.*, subsidizing higher cost customers such as those in rural areas), that goal remained elusive at the time the PUC was making its decision in 1996 and 1997 (and is not fully operational even today).

The court also observes that it would be impractical to track the costs for providing service to each separate house, and charge a different rate. Accordingly, there will always be some cost averaging, and it is simply a question of how finely to draw the lines, where, and the criteria for that decision (*e.g.*, urban versus rural, north versus south, etc.) The PUC understandably wants to fully explore that question, and obtain input from the public and interested parties, instead of rushing into deaveraging.

The court is concerned by reports that the UT 125 proceeding (in which the PUC had planned to address deaveraging) has been delayed by a court challenge. While this court will not micro-manage the PUC's affairs, the PUC should address this issue in a timely fashion.

## 2. Count Two (performance standards with teeth)

MCI contends the PUC should have imposed additional performance standards on U.S. West governing the quality of service provided to MCI, and also complains that the existing standards do not adequately penalize U.S. West (or compensate MCI) if U.S. West does not meet those performance standards.

In *US West Communications, Inc. v. TCG Oregon*, CV 97–858–JE, this court affirmed the PUC's decision to require certain performance standards and to provide TCG with specific remedies in the event U.S. West repeatedly failed to meet those standards.

However, that does not mean that the PUC must include performance standards and specific remedies in every interconnection agreement. Rather, it is a discretionary decision on the part of the PUC, and this court will not disturb that decision unless it is arbitrary and capricious or violates the Act.

Many factors may enter into that decisionmaking calculation, including the specific terms of the requested standards and remedies, any counter-proposal from U.S. West, the adequacy of any standards and remedies already included in the agreement, the ILEC'S past conduct, the duration of the agreement, and the CLEC's ability to adequately protect its own interests. The PUC's decision to reject the standards and remedies requested by MCI in this particular instance was not arbitrary and capricious and does not violate the Act.

### *ORDER*

Plaintiff MCI's motion (docket # 27) for summary judgment is DENIED. The motions for summary judgment by defendant PUC and the Commissioners (docket # 37) and by defendant U.S. West (docket # 34) are GRANTED.

IT IS SO ORDERED.